```
 1  SCOTT N. SCHOOLS (SCBN 9990)
    United States Attorney
 2  JOANN M. SWANSON (CSBN 88143)
    Chief, Civil Division
 3  Assistant United States Attorney

 4      450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
 5      Telephone: (415) 436-6855
        Facsimile:  (415) 436-6927
 6      Email: joann.swanson@usdoj.gov

 7  Attorneys for Federal Defendants
```

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| OLIVER HILSENRATH,       ) | No. C07-05100 WHA |
|---|---|
| ) | Related to CR 03-00213 WHA |
| Plaintiff,       ) | |
| ) | **UNITED STATES' NOTICE OF** |
| v.       ) | **MOTION AND MOTION AND** |
| ) | **MOTION TO DISMISS** |
| UNITED STATES OF AMERICA,       ) | |
| ) | Date:  January 3, 2008 |
| ) | Time:  8:00 a.m. |
| Defendant.       ) | Ctrm:  9, 19th Floor |
| _____ ) | |

## I.  NOTICE OF MOTION

PLEASE TAKE NOTICE that on Thursday, January 3, 2008, at 8:00 a.m., the United States, appearing specially, will and hereby does ask the Court to dismiss plaintiff's action against the United States pursuant to FRCP 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction over the action and pursuant to FRCP 12(b)(6) on the grounds that the action fails to state a claim upon which relief can be granted.[1]  This motion is based on this motion, the memorandum filed in support of the motion, the Declaration of Laurel Beeler ("Beeler Decl.") and the pleadings on file herein.

## II.  RELIEF SOUGHT

The United States asks the Court to dismiss this case with prejudice for lack of subject matter jurisdiction and failure to state a claim.

## III.  INTRODUCTION

Plaintiff Oliver Hilsenrath ("plaintiff" or "Hilsenrath") asks the Court to enjoin the United States Department of Justice, Criminal Division, Office of International Affairs ("OIA"), from returning proof of service of process of a Swiss order that OIA served at Switzerland's request under the United States-Switzerland Mutual Legal Assistance Treaty (the "Treaty" or "MLAT").

The Court should dismiss plaintiff's motion for lack of jurisdiction for several reasons. First, there is no case or controversy for the Court to decide.  Specifically, plaintiff has already been served with the Swiss order, regardless of whether or not OIA returns a proof of service. Thus, his motion for injunctive relief is moot.  Second, plaintiff is attempting to attack service of the Swiss order in order to challenge that order.  The court does not have jurisdiction over Swiss officials or proceedings.  Any challenge to those proceedings must be made in Switzerland. Third, there has been no waiver of sovereign immunity which would allow plaintiff to sue the United States.  Indeed, he has no standing whatsoever to challenge service of process under the

---

[1] Plaintiff has not complied with the requirements of FRCP 4(i) regarding service on the United States.

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C  07-5100 WHA                                                    1

Treaty. For these reasons, the Court should dismiss this case for lack of jurisdiction. See Fed. R. Civ. P. 12(b)(1). Alternatively, the Court should dismiss Mr. Hilsenrath's motion for failure to state a claim because there are no exceptions that excuse the United States' obligation to return proof of service to Switzerland. See Fed. R. Civ. P. 12(b)(6).

### IV. PROCEDURAL POSTURE

On September 20, 2007, plaintiff filed an "Amended Motion for a Writ of Injunction" in United States v. Hilsenrath, CR 03 - 00213-WHA (the "Criminal Case"). See the Criminal Case, Clerk's Record (CR) 422.[2] In it, he stated that OIA had served him by certified mail with an order that the Swiss government issued in a criminal case in Switzerland. Id. at 2 and Exh. A. Hilsenrath asked the Court to enjoin OIA from returning proof of service to Switzerland. See id. at 2, 4.

More specifically, plaintiff's motion alleged that

- By letter dated September 6, 2007, OIA mailed him an order from the Federal Office of Justice/Swiss Central Authority entitled "Provisional Suspension of Investigation and Cessation of Criminal Proceedings." See id. at 2, 8; see also id. at Exh. A (the order).

- Service of the order violated the United States Constitution and United States laws because (a) the Swiss authorities adjudicated issues of U.S. law already decided by this Court, (b) the Swiss order confiscates his assets without due process, and (c) the Swiss order threatens him and his business partners' interests in other foreign countries. See id. at 2-3.

- Return of service to the Swiss authorities harms him because it triggers a 10-day appeal period and because it threatens him with indefinite arrest in Switzerland. See id. at 3.

On September 25, 2007, the United States responded, stating that no relief was available in the criminal case and suggesting that the Court either construe the case as a civil case or dismiss it without prejudice to Hilsenrath refiling it as a civil case. See the Criminal Case, CR 423 at 2. The Court then construed Mr. Hilsenrath's motion as a civil case and related it to the criminal case. See Hilsenrath v. the United States, C 07-5100 WHA ("the Civil Case"), CR 2, 4,

---

[2] CR 422 in the Criminal Case is a four-page amended motion with 76 pages of exhibits. The 80 pages are numbered from 1 to 80 in the footer and the e-filing header. CR 422 was filed in this civil case as CR 2.

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C 07-5100 WHA                                    2

6.

## V.  STATEMENT OF FACTS

**A.  Service of Process under the Treaty**

The United States has entered into a Mutual Legal Assistance Treaty (MLAT or Treaty) with Switzerland concerning criminal matters.  See Beeler Decl., Exh. C (Treaty Between the United States and the Swiss Confederation on Mutual Assistance in Criminal Matters).  Article 1(4)(d) of the Treaty provides for "the service of judicial and administrative documents."  Id. Exh. C at 6.  Article 22 of the Treaty sets forth the requirements for service:

> 1.  The competent authority in the requested state [here, the United States] *shall effect* service of any procedural document, including a court judgment, decision or similar document, which is transmitted to it for this purpose by the requesting state [here, the Swiss Confederation].  Unless service in a particular form is requested, it may be effected by registered mail.  The requested state shall, upon application, effect personal service or, if consistent with the law in the requested state, service in any other form.
>
> \*          \*          \*          \*
>
> 4.  Proof of service shall be made by a receipt dated and signed by the person served or by a declaration specifying the form and date of service and signed by the person effecting it.

Id. at 21-22 (emphasis added).

Article 32(1) requires the requested state (here, the United States) to notify the requesting state (here, Switzerland) after it has completed a request for mutual legal assistance:

> Upon completion of a request, the executing authority (here, the United States) shall return the original request together with all information obtained, indicating place and time of execution, to the Central Authority of the requested state [here, OIA].  The latter shall forward it to the Central Authority of the requesting state [here, Switzerland].

Id. at 29.

**B.  Service on Plaintiff**

The Swiss authorities issued an order in the Swiss criminal case.  See CR 2 at 2 and Exh. A (includes the order and OIA transmittal letter dated September 6, 2007).  Plaintiff acknowledges receipt of the order.  Id.  According to OIA, it mailed plaintiff the order on September 6, 2007, by certified mail, return receipt requested.  Beeler Decl., ¶¶ 2, 3 and Exhibit A.  The return receipt is signed by Oliver Hilsenrath on September 10, 2007.  Id., Exh A.  OIA

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C  07-5100 WHA                                             3

1  has not yet returned proof of service to the Swiss authorities. Id. ¶ 5. In addition, OIA sent a
2  copy of the order to AUSA Laurel Beeler on August 29, 2007, and she forwarded it by email to
3  plaintiff on August 30, 2007. Id. ¶ 3.

4       By email dated October 4, 2007, OIA emailed the Swiss authorities, asking them if the
5  10-day appeal clock in Switzerland begins running (a) on the date that OIA officially notifies the
6  Swiss authorities that OIA served Hilsenrath or (b) the date he received service. See Beeler
7  Decl., Exh. B. On October 4, 2007, the Swiss Federal Office of Justice, Division for
8  International Legal Assistance, Section for Mutual Legal Assistance, responded, stating that the
9  time to appeal begins to run on the date the addressee (i.e., plaintiff) was served or received
10 notice of the decision. Id. By email dated October 5, 2007, AUSA Beeler forwarded this email
11 exchange to plaintiff. Id., ¶ 4.

12         **VI. THE COURT LACKS SUBJECT MATTER JURISDICTION.**
13 **A. The Legal Standard**
14      Dismissal is appropriate under Rule 12(b)(1) when the Court lacks subject matter
15 jurisdiction over the claim. Federal Rule of Civil Procedure 12(b)(1). Federal subject matter
16 jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians
17 v. California Board of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1989). A Rule 12(b)(1)
18 motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or
19 allege a lack of jurisdiction that exists despite the formal sufficiency of the complaint. Thornhill
20 Publishing Co., Inc. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979);
21 Roberts v.Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). A federal court is presumed to lack
22 subject matter jurisdiction until the contrary affirmatively appears. Stock West, Inc. v.
23 Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).
24 **B. There Is No Federal Jurisdiction Because there Is No Case or Controversy.**
25      Federal jurisdiction is limited to actual cases and controversies. See U.S. Const., Art. 3;
26 Alaska Right to Life Political Action Comm. v. Feldman, 2007 WL 2743603, *5 (9th Cir. Sept.
27 21, 2007); see also Allen v. Wright, 468 U.S. 737, 750-1 (1984) (explaining justiciability
28 doctrines); Ruvalcaba v. Los Angeles, 167 F.3d 514, 521 (9th Cir. 1999) (if there is no longer a

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C 07-5100 WHA                            4

1 possibility that an appellant can obtain relief for his claim, that claim is moot).

2 Here, there is no actual case or controversy. Specifically, under the terms of the treaty,
3 plaintiff has already been served, and this civil case is moot and should be dismissed.

4 Despite having received the Swiss order by certified mail and email, plaintiff's position
5 appears to be that service is accomplished only when OIA formally notifies Switzerland. He
6 asserts that the date of service is important, because under the terms of the order, he has ten days
7 to appeal it. CR 2 at 3. Plaintiff offers no support for his position regarding service.

8 Plaintiff's position on service is incorrect. First, the Treaty itself is the law of the land.
9 U.S. Const., Art. VI, § 2. The provisions of the Treaty have equal footing with acts of Congress
10 and are binding on the courts. See, e.g., Asakura v. City of Seattle, 265 U.S. 332, 341 (1924);
11 United States v. The Peggy, 5 U.S. 103, 109-10 (1801). Moreover, to the extent that provisions
12 of a treaty are inconsistent with a preexisting statutory provision, the Treaty supersedes the
13 statute. See United States v. Erato, 2 F.3d 11, 15-16 (2nd Cir. 1993); accord United States v.
14 Decker, 600 F.2d 733, 737 n.6 (9th Cir. 1979). Second, the Treaty imposes certain obligations of
15 mutual legal assistance upon the parties in criminal matters. Those obligations include
16 substantive legal tasks like taking testimony and gathering documentary evidence, see Article
17 1(4), and also more clerical tasks like "the service of judicial and administrative documents."
18 See Treaty, Article 1(4)(d), Exh. C at 6. Further, the plain language of the Treaty governs. See
19 In re Commissioner's Subpoenas, 325 F.3d at 1294 (plain language of Treaty governs); accord
20 Lazarevich, 147 F.3d 1061 at 1064.

21 Third, the Treaty itself defines the service requirements. Article 22 sets forth the Treaty's
22 only requirements for service: registered mail and a return receipt. Beeler Decl., Exh. C at 18-
23 19. That happened here. OIA served the Swiss order on plaintiff by certified mail, and he signed
24 the return receipt on September 10, 2007. This satisfies the Treaty's requirements for service of
25 process. Id., Exh. C at 21-22.[3] In addition, plaintiff has acknowledged receipt of the order when

---

27 [3] While Article 32(1) of the Treaty requires the United States to notify Switzerland that it
28 executed its request, confirmation of service is different than service itself.

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C  07-5100 WHA                                5

he attached the order to his motion in this case. Thus, plaintiff has already been served with the Swiss order and his motion/complaint to enjoin service is moot. Further, the Swiss authorities confirmed that service means the date Hilsenrath was served or otherwise learned of the order. See Exhibit B (under Swiss law, the ten-day time to appeal the Swiss order begins to run the day after he was served or learned of the order, and "whether we [the Swiss equivalent of OIA] or the Prosecutor have been advised by the U.S. authorities or not is not decisive").

Given that under the plain language of the Treaty, plaintiff has already been served, his claim is moot and should be dismissed.

**C. The Court Does Not Have Jurisdiction over Swiss Officials.**

Hilsenrath challenges service is because, in his view, it triggers the ten-day appeal period in Switzerland for him to challenge the Swiss order. See CR 2 at 2-3. As he also explains in his motion, he disputes the Swiss order because it confiscated his assets, subjects him to possible criminal liability, adversely affects his business interests, adjudicated issues of U.S. law already decided here, and generally decided his case wrongly. See id. (asserting that this also violates the United States Constitution and United States laws). Thus, plaintiff is using this lawsuit to challenge a Swiss order applying Swiss law in a Swiss criminal case about his potential liability and assets in Switzerland and elsewhere in Europe. Challenges to the Swiss order must be raised in Switzerland or where the assets are, not here. Similarly, if plaintiff disagrees with the Swiss authorities about their interpretation of U.S. law or about what his appeal rights are under Swiss law, he must raise his claim in Switzerland.

Plaintiff cannot attack the legitimacy of the Swiss order in the United States or achieve any remedy here that would prevent the Swiss authorities from implementing the order against him. Indeed, this court has already made this finding in the criminal case. See CR 432 at 2 (Nov. 7, 2007 order stating that dispute with Switzerland cannot be resolved here). This is consistent with the case law. See e.g., Credit Suisse v. United States District Court, 130 F.3d 1342, 1348 (9th Cir. 1997) (if plaintiffs in a human rights case wanted to contest the legality of a freeze on assets ordered by Swiss authorities, they should do so in the Swiss judicial system).

1    Similarly, plaintiff cannot state a constitutional claim here based on wholly
2 extraterritorial acts of Swiss officials, even if their acts affect him here.  See, e.g., Stonehill v.
3 United States, 405 F.2d 738, 743 (9th Cir. 1968) (the Fourth Amendment does not apply
4 extraterritorially to the acts of foreign officials).
5    Again, since plaintiff cannot state a federal claim against Swiss official, there is no
6 justiciable case or controversy, and the Court should dismiss his motion and civil case under
7 FRCP 12(b)(1) for lack of jurisdiction.
8 **D. There Is No Waiver of Sovereign Immunity for Plaintiff to Sue the United States.**
9    It is well settled that "the United States, as sovereign, 'is immune from suit save as it
10 consents to be sued . . . and the terms of its consent to be sued in any court define that court's
11 jurisdiction to entertain the suit.'"  Lehman v. Nakshian, 453 U.S. 156, 160(1981).
12    Here, plaintiff sues to prevent the United States from executing its Treaty obligations –
13 namely, returning the proof of service to Swiss officials.  The Treaty, however, does not provide
14 a waiver of sovereign immunity that would allow him to sue the United States for its actions
15 arising out of or related to its obligations under the Treaty.  Indeed, plaintiff does not have any
16 standing to sue under the Treaty.  Private persons are not parties to or beneficiaries of mutual
17 legal assistance treaties.  By their express terms, the treaties set forth mutual obligations between
18 countries like the United States and Switzerland.  See, e.g., Beeler Decl., Exh. C at 5 (as set forth
19 in Article 1, the "contracting parties undertake to afford each other, in accordance with the
20 provisions of this Treaty, mutual assistance").  Most treaties, including the United States-
21 Switzerland MLAT, expressly exclude private parties from asserting rights under the treaties.
22 For example, the MLAT here states:

> The existence of restrictions in this Treaty shall not give rise to a right on the part of any person to . . . obtain other judicial relief in connection with requests under this Treaty, except with respect to [certain exceptions not relevant here, like the applicability of the requested state's laws regarding search and seizure and a person's right to refuse to testify if he has a right to refuse under the law in either state.]

26 Article 37(1), Beeler Decl., Exh. C at 31.
27 //
28

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C  07-5100 WHA                                7

1   Under the plain language of the Treaty, only the contracting parties have rights and
2   obligations regarding mutual service of process.  See Article 22, Exh. C at 21-22.  For example,
3   only states – and not private parties – can request service of process, and only states – and not
4   private parties – can refuse to serve process under certain limited circumstances that don't apply
5   here.  See Article 22(1), Exh. C at 21 (exceptions include subpoenaing a witness's testimony in a
6   criminal proceeding where he is a defendant); Articles 2 and 3, Exh. C at 6-7 (setting forth other
7   exceptions, like extradition, execution of a criminal judgment or prejudice to the United States'
8   security interests).  Moreover, the Treaty provides expressly that private persons have no right to
9   "obtain judicial relief in connection with [Treaty] requests" except in limited circumstances that
10  do not apply here.  See Article 37(1), Exh. C at 31 (statute and exceptions discussed supra, p. 5).

   "When the language of the Treaty is clear, as with any exercise in statutory construction,
[the court's] . . . analysis ends there and [the court] . . . appl[ies] the words of the treaty as
written."  In re Commissioner's Subpoenas, 325 F.3d 1287, 1294 (11th Cir. 2003), abrogated on
other grounds, In re Clerici, 481 F.3d 1324, 1334 (11th Cir.), petition for cert. filed, 76 USLW.
3074 (Aug. 17, 2007); accord United States v. Lazarevich, 147 F.3d 1061, 1064 (9th Cir. 1998)
(citing and applying the same principle).

   Thus, only the Swiss authorities – and not a defendant – can challenge an allegedly
erroneous use of Swiss banking records in a defendant's criminal case in violation of restrictions
on use in the MLAT.  See United States v. Garcia, 37 F.3d 1359, 1366 (9th Cir. 1994) ("Garcia
concedes that under the Treaty a defendant has no standing to challenge an erroneous use of
Swiss banking records"), receded from on other grounds, United States v. Jackson, 167 F.3d
1280 (9th Cir. 1999).  Similarly, in United States v. Davis, the Second Circuit held that the clear
and unambiguous language of article 37 reflected the contracting states' intention that "the Treaty
would not . . . confer judicially enforceable rights on individuals," and that therefore a defendant
had no standing to suppress Swiss bank records based on an alleged violation of the Treaty.  767
F.2d 1025, 1029-30 (2nd Cir. 1985); see United Kingdom v. United States, 238 F.3d 1312, 1317
(11th Cir. 2001) (key feature of MLAT between the United Kingdom and the United States "is the

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C  07-5100 WHA                                 8

requirement that a request for assistance be made, not directly to the courts, but rather between the 'Central Authorities'. . . . MLAT, art. 2, ¶ 2.  There is no provision for private parties, such as individual criminal defendants . . ., to request the production of information.")

Plaintiff has no standing to challenge service of process because only the United States and Switzerland have obligations and rights under the Treaty regarding service of process. Accordingly, the Court should dismiss the motion for lack of jurisdiction.  See Fed. R. Civ. P. 12(b)(1).

### VII. THE COURT SHOULD DISMISS PLAINTIFF'S CASE BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

**A. The Legal Standard**

A court should grant a motion to dismiss under Rule 12(b)(6) when a plaintiff's complaint does not provide grounds establishing that he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct 1955, 1964 (2007).  Allegations of material fact are taken as true and construed in the light most favorable to the plaintiff.  See Vasquez v. Los Angeles County, 487 F.3d 1246, 1249 (9th Cir.), petition for cert. filed, 76 USLW 3189 (Sept. 26, 2007). Nonetheless, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.  See id.  Similarly, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  See Bell Atlantic Corp., 127 S.Ct. At 1965.

**B. Plaintiff Has Not Stated and Cannot State any Claim against the United States.**

Here, the Treaty required the United States to serve Mr. Hilsenrath with the order by certified mail, which it did.  See Treaty, Article 1(4)(d) (requirement of service) and 22 (service by certified mail); Exh. C at 6, 21-22.  The United States' remaining treaty obligation is to notify the Swiss authorities that it served Hilsenrath.  See Treaty, Article 32(1), Exh. A at 29.  There are no exceptions under the Treaty that excuse this obligation to return proof of service to the Swiss authorities.  For example, OIA would have discretion to refuse service of process if (a) Switzerland were subpoenaing plaintiff as a witness in his own criminal proceeding, which is not the situation here, or (b) the request for assistance related to a matter for which assistance is not

UNITED STATES' NOTICE OF MOTION AND
MOTION TO DISMISS
C  07-5100 WHA                                       9

available under Article 2, which also does not apply here.  Cf. Treaty, Article 22(2), Exh. C at 21; Articles 2-3, Exh. C at 6-7 (setting forth other exceptions, like extradition, execution of a criminal judgment or prejudice to the United States' security interests).  Instead, OIA merely served Hilsenrath with a copy of an order.  Plaintiff has not and cannot state a claim, and the Court should dismiss his complaint.  See Fed. R. Civ. P. 12(b)(6).

## VIII.  CONCLUSION

The Court should dismiss the motion for lack of jurisdiction and  failure to state a claim, and insufficient service of process.  See Fed. R. Civ. P. 12(b)(1)& (6).  A proposed order is lodged with this motion.

Dated: November 13, 2007              Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney


          /s/ Joann Swanson
JOANN SWANSON
Chief, Civil Division